**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO SUPPRESS EVIDENCE** |
| vs. | ) | |
| | ) | Case No. 1:11-cr-001 |
| Ivanna Red Bow, | ) | |
| | ) | |
| Defendant. | ) | |

___

Before the Court is the Defendant's "Motion to Suppress Evidence" filed on August 10, 2011. See Docket No. 27. The Government filed a response in opposition to the motion on August 17, 2011. See Docket No. 29. An evidentiary hearing was held on October 14, 2011 in Bismarck, North Dakota. The Court denies the motion for the reasons set forth below.

**I.    BACKGROUND**

In the early morning on December 30, 2010, units from the Standing Rock Bureau of Indian Affairs Police Department were dispatched to 878 Blue Jay Street, Cannonball, North Dakota. Officer Stacy LaRocque was the first law enforcement officer to arrive on scene. Officer LaRocque found Loren Uses Arrow lying on the floor inside the back door of the residence with a large amount of blood pooled underneath him. Milan Uses Arrow, Loren's brother, told Officer LaRocque that Loren had been stabbed and was not breathing. Milan Uses Arrow also told Officer LaRocque that Loren lived with the defendant, Ivanna Red Bow, in a residence nearby.

The law enforcement officers went to Red Bow's residence and found what appeared to be blood on the front porch and door. The officers observed additional areas of what appeared to be

blood inside the home. Ivanna Red Bow and Clayton Ayutapi were in the residence along with Red Bow's two minor children.

Special Agent David Lawrence with the Bureau of Indian Affairs (BIA) testified at the suppression hearing on October 14, 2011. Agent Lawrence has been with the BIA twelve (12) years. He was on duty on December 30, 2010, when he received a telephone call concerning a stabbing incident in Cannonball, North Dakota.

BIA Agent Lawrence said Ivanna Red Bow was arrested at approximately 5:00 a.m. on December 30, 2010. Lawrence did not interview Red Bow at that time due to her level of intoxication. Lawrence first spoke to Red Bow at the police station in Fort Yates, North Dakota at approximately 4:00 p.m. on December 30, 2010. The interview was conducted in an office located in the Criminal Investigative Division. Both Special Agent Lawrence and Special Agent Jake O'Connell of the Federal Bureau of Investigation (FBI) were involved in the interview.

BIA Agent Lawrence said before the interview started, Red Bow was informed of her *Miranda* rights and he believed she understood those rights. Lawrence said Red Bow was verbally informed of her *Miranda* rights and she also signed a written waiver provided by the FBI entitled, "Advice of Rights." See Exhibit No. 1. The FBI "Advice of Rights" form reveals that Red Bow signed the waiver of rights form at 4:05 p.m. on December 30, 2010. Lawrence said after Red Bow was informed of her *Miranda* rights, she was interviewed and outlined in chronological order what had happened that evening. Lawrence estimated the verbal statement provided by Red Bow took approximately 20-25 minutes to complete. Thereafter, the officers had Red Bow prepare a written statement. Lawrence estimated it took approximately 10-15 minutes for Red Bow to write out her

statement.  See Exhibit No. 2.  Lawrence estimated that the entire interview of Red Bow lasted approximately one hour.

BIA Agent Lawrence testified that during the interview he received a telephone call from attorney Jim Cerney on his cell phone.  The call came in at approximately 4:35 p.m.  Cerney is an attorney and a public defender with the Standing Rock Sioux Tribe.  Lawrence said it was his recollection that the call from Jim Cerney came when Red Bow was in the process of preparing her written statement.  Lawrence informed attorney Jim Cerney during the telephone conversation that the officers were conducting an interview of Red Bow and Cerney was not given the opportunity talk to Red Bow.

BIA Agent Lawrence said throughout the entire interview with Ivanna Red Bow, he had no concern that she was intoxicated or impaired.  Lawrence said during the interview Red Bow was awake, coherent, understandable, did not slur her speech, and seemed to be in control of her faculties.  Lawrence also testified that Red Bow had no difficulty in preparing a written statement describing what had occurred the evening of the stabbing incident.  See Exhibit No. 2.

On cross-examination, BIA Agent Lawrence acknowledged that it is his practice not to interrogate or question persons who are intoxicated.  The record reveals that at the time Red Bow was first arrested and brought to the police station, she was administered an alcohol breath test which revealed an alcohol concentration of .154.  This was at approximately 5:55 a.m. on December 30, 2010.  See Exhibit No. 54.  A second breath test was administered at 6:57 a.m. which revealed an alcohol concentration of .190.  See Exhibit No. 53.  Thereafter, a third alcohol breath test was administered to Red Bow at 10:58 a.m. which revealed that her alcohol concentration was .121.  See Exhibit No. 50.  No further breath tests were administered that day to the defendant.

3

BIA Agent Lawrence said he did interview a fact witness; namely, Clayton Ayutapi, at approximately 3:30 p.m. on December 30th. Lawrence was questioned about Clayton Ayutapi's level of intoxication as the records reveal that Ayutapi was administered a breath test at 2:30 p.m. and his alcohol concentration was .085. The defendant, Ivanna Red Bow, was not retested at 2:30 p.m. as Clayton Ayutapi had been. Lawrence again said at no time during the interview of Red Bow did he believe she was intoxicated, impaired, or under the influence of alcohol.

FBI Agent Jake O'Connell also testified at the suppression hearing. Agent O'Connell has been employed with the FBI for ten (10) years. He is currently assigned to investigate magor crimes on the Standing Rock Reservation.

FBI Agent O'Connell received a telephone call at approximately 6:00 a.m. on December 30, 2010, and was informed of a stabbing in Fort Yates. Agent O'Connell was informed by BIA Special Agent David Lawrence that the suspects were under the influence at the time of the arrest and they were giving the witnesses some time to sober up before being questioned. Agent O'Connell said he left Bismarck at approximately 12:30 p.m. and arrived in Fort Yates around 2:00 p.m. that afternoon. Agent O'Connell spoke with one of the witnesses, Clayton Ayutapi, at 2:30 p.m. which was described as a "chronological interview." Agent O'Connell said the interview with Clayton Ayutapi lasted until approximately 3:30 - 3:45 p.m., and he had Ayutapi sign an FBI "Advice of Rights" form before the interview commenced in which Ayutapi waived his *Miranda* rights. Following the interview, Ayutapi was escorted back to his cell. Agent O'Connell and Special Agent Lawrence then discussed the upcoming interview with Ivanna Red Bow.

FBI Agent O'Connell said Ivanna Red Bow was verbally informed of her *Miranda* rights before the interview started and she also signed a written form waving such rights. See Exhibit No.

1. In other words, Red Bow was advised in writing and orally that she need not make a statment and she had a right to counsel. Agent O'Connell described Red Bow as being cooperative, coherent, understandable, and exhibiting no signs or symptoms of being under the influence. Agent O'Connell said Red Bow clearly understood her *Miranda* rights and at no time exhibited any signs of being intoxicated or unable to understand what was going on.

FBI Agent O'Connell described the interview with Red Bow as conversational and non-confrontational. Red Bow was asked to tell her story and she explained what happened. She also admitted that she had stabbed her boyfriend, Loren Uses Arrow. Agent O'Connell said the verbal interview lasted approximately 30-40 minutes after which he asked Red Bow to prepare a written statement summarizing what had occurred. He said Red Bow clearly understood what was going on and she voluntarily agreed to provide a written statement. In summary, Agent O'Connell said Red Bow, Loren Uses Arrow, and others had been drinking throughout the day. Later in the evening an argument developed between Red Bow and Loren Uses Arrow concerning a three-way sexual encounter. Red Bow said before the argument escalated, Clayton Ayutapi had left the residence. Red Bow admitted that during the argument she grabbed a knife and stabbed her boyfriend, Loren Uses Arrow.

FBI Agent O'Connell said throughout the interview he was always in close proximity to Red Bow. He never detected an odor of alcohol nor observed any shaking or indicators of intoxication. Agent O'Connell said Red Bow appeared to be alert, her eyes and head movements were quick and responsive, she exhibited no signs or symptoms of being under the influence or intoxicated, she appeared to have no cognitive deficits, and she deomonstrated "no lack of understanding." Agent

O'Connell testified that based upon his background and experience, it appeared to him that Ivanna Red Bow was not under the influence and was in "full control of her faculties."

According to FBI Agent O'Connell, approximately 30-40 minutes into the interview, BIA Agent David Lawrence received a telephone call from attorney Jim Cerney and left the interview room. Agent O'Connell said he never spoke with attorney Jim Cerney. He recalled that Cerney had called <u>after</u> Red Bow had already provided a verbal statement to the officers. Agent O'Connell said that after the telephone call ended, BIA Agent Lawrence came back into the interview room and again confirmed with Red Bow that she was providing a statement voluntarily and that she had waived her *Miranda* rights.

Jim Cerney testified at the suppression hearing on October 14, 2011. Cerney is an attorney who works under contract as a public defender for the Standing Rock Sioux Tribe. Cerney has been practicing law for approximately five (5) years.

Jim Cerney said that at approximately 4:15 p.m. on December 30, 2010, he was contacted by Deborah Plenty Chief who identified herself as a relative of Ivanna Red Bow. Deborah Plenty Chief informed Cerney that she believed Red Bow was in trouble, and she asked Cerney to get in touch with Red Bow at the correctional center. Cerney said he promptly called the detention center in Fort Yates and at first received a busy signal. At approximately 4:20 p.m., Cerney spoke with a dispatcher and was informed that Ivanna Red Bow had been taken up for an interview. Cerney told the dispatcher to document all of the phone calls he made because Cerney expected problems in the future concerning his involvement. Cerney said he called back shortly after the first telephone call and asked to speak with BIA Agent David Lawrence. The call went through to Agent Lawrence, and Cerney asked to speak to Ivanna Red Bow. Cerney was informed by Agent Lawrence that "it's

6

too late, she's already confessed." Cerney described that conversation as being rather short in length. After about a minute and a half conversation with Agent Lawrence, Cerney said he hung up but then called back again at 4:45 p.m. and again asked to speak to Red Bow. Cerney was unable to speak to Red Bow at that time. He first had an opportunity to speak with Red Bow later that same evening at approximately 7:30 p.m. When he first spoke to Red Bow, Cerney said he was aware that she had provided a statement to law enforcement officers. Cerney simply tried to reassure Red Bow, but he also told her not to speak with anyone else until he had an opportunity to investigate what had occurred.

On January 3, 2011, Ivanna Red Bow was charged in a criminal complaint with unlawfully killing Loren Uses Arrow. See Docket No. 1. She was later indicted for second degree murder on January 12, 2011. See Docket No. 15. Red Bow filed a motion to suppress evidence relating to the interview on August 10, 2010. See Docket No. 27.

## II. LEGAL DISCUSSION

### A. *MIRANDA* WAIVER

Ivanna Red Bow contends her *Miranda* waiver and confession were involuntary and invalid because she was intoxicated. In order to use a statement made by a defendant during a custodial interrogation, the Government must prove, by a preponderance of the evidence, that law enforcement officers informed the defendant, prior to receiving the statement, of her *Miranda* rights and obtained a valid waiver of those rights. Miranda v. Arizona, 384 U.S. 436, 444 (1966); see Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). A defendant's *Miranda* waiver must be voluntary,

knowing, and intelligent. United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008); Moran v. Burbine, 475 U.S. 412, 421 (1986) (quoting Miranda, 384 U.S. at 444).

There are two inquiries regarding whether a *Miranda* waiver is effective:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994) (quoting Moran, 475 U.S. at 421). The totality of the circumstances, including the background, experience, and conduct of the defendant, are evaluated to determine whether a *Miranda* waiver was effective. Id. (citing Moran, 472 U.S. at 421; United States v. Barahona, 990 F.2d 412, 418 (8th Cir. 1993)).

Red Bow does not contend, nor was there any evidence submitted which reveals, that federal law enforcement officers intimidated, coerced, or deceived her into waiving her *Miranda* rights. Instead, Red Bow essentially contends she did not fully understand what was going on during the interview because she was under the influence of alcohol.

It is well-established that alcohol use is a relevant factor to determine the effectiveness of a *Miranda* waiver. However, intoxication does not automatically render a waiver involuntary. Gaddy, 532 F.3d at 788 (citing United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990) cert. denied 499 U.S. 941 (1991)); United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (citing Casal, 915 F.2d at 1229). The test is whether intoxication caused the defendant's will to be overborne. Gaddy, 532 F.3d at 788 (citing Casal, 915 F.2d at 1229). The Eighth Circuit Court of Appeals upheld a district court's finding that a defendant who used methamphetamine the evening before, and marijuana on the day he waived his *Miranda* rights, voluntarily consented because law

8

enforcement officers testified the defendant appeared "sober and in control of his faculties." United States v. Contreras, 372 F.3d 974, 977-78 (8th Cir. 2004). Similarly, the Eighth Circuit also upheld a district court's determination that a defendant voluntarily waived his *Miranda* rights because he appeared awake and coherent, acknowledged that he understood his rights, and indicated he wanted to make a statement even though the defendant had not slept the previous night and had consumed pain relievers, muscle relaxers, alcohol, marijuana, and cocaine within 24 hours of waiving his rights. Gaddy, 532 F.3d at 786, 788-89.

In this case, two experienced federal law enforcement officers testified that Ivanna Red Bow did not appear to be under the influence at the time she waived her *Miranda* rights and voluntarily provided a verbal statement and a written statement to the officers. There is no dispute that Red Bow was intoxicated during the morning hours of December 30, 2010. However, by the time the officers interviewed Red Bow at approximately 4:00 p.m., she had been in custody for nearly ten hours without consuming alcohol. The officers testified that Red Bow appeared alert, coherent, understandable, cooperative, and she exhibited no signs or symptoms of being intoxicated or under the influence. In essence, both officers who were involved in the interview of Red Bow on December 30, 2010 testified that she was at all times during the interview sober, coherent, and in full control of her faculties. By the time the interview of Red Bow took place at 4:00 p.m., the effects of the alcohol had worn off and the officers' observations of Red Bow corroborated that fact.

The Court finds that the totality of the circumstances clearly demonstrate that Ivanna Red Bow's will was not overborne and that she made a knowing and voluntary decision to waive her *Miranda* rights. The Court further finds that Red Bow's *Miranda* waiver was not rendered

9

ineffective due to her earlier consumption of alcohol. The waiver was made with a full awareness of the *Miranda* rights being abandoned and the consequences of doing so.

### B. ATTORNEY ACCESS TO THE DEFENDANT

Red Bow also contends that her confession should be suppressed because the federal law enforcement officers did not allow an attorney, who had been contacted by a relative of Red Bow, to speak with her. The United States Supreme Court's decision in Moran v. Burbine is controlling and dispositive of this issue.

In Moran v. Burbine, 475 U.S. 412 (1986), the defendant confessed to the murder of a young woman. At no time during the police interrogation did the defendant request an attorney. However, while the defendant was in custody his sister retained an attorney to represent him. The attorney telephoned the police station and was assured the defendant would not be questioned until the next day. Although law enforcement officers had assured the attorney that the defendant would not be interviewed until the next day, detectives questioned the defendant that same evening and elicited inculpatory statements about his involvement in a murder. Id. at 415. The United States Supreme Court held that although this conduct was distasteful, it did not violate the defendant's constitutional rights.

The defendant in Moran had been given *Miranda* warnings and had not requested an attorney before making the damaging admissions. The law enforcement officers did not inform the defendant of the attorney's attempts to contact him prior to his confession. The defendant's statements were introduced at trial and he was convicted of first degree murder. Id. at 418. The Supreme Court found that the law enforcement's failure to inform the defendant of the attorney's telephone call did

not render the defendant's *Miranda* waiver involuntary because the defendant was not aware of the call. The Supreme Court in Moran said as follows:

> Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right.... Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

Id. at 422-23.

The Supreme Court in Moran specifically said that the failure by the police to inform a defendant of an attorney's telephone call does not deprive a defendant of "knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Id. at 424. The Supreme Court has made it clear that, whether intentional or inadvertent, the level of police culpability in failing to inform a defendant of such a telephone call from an attoney has no bearing on the validity of a waiver of rights. Id. at 423.

The Eighth Circuit Court of Appeals adopted the Moran holding in Matney v. Armontrout, 956 F.2d 824 (8th Cir. 1992). The defendant in Matney voluntarily presented himself to the police for questioning about several burglaries. The defendant's attorney had learned the defendant was at the police station and immediately called several times to speak with him. The dispatcher and/or the law enforcement officers initially told the attorney that the defendant was not at the police station. Later, an officer told the attorney that the defendant was present but would not be available to speak with the attorney for thirty minutes. After signing a *Miranda* waiver and stating he did not want an attorney present, the defendant confessed to the burglaries. Relying on Moran, the Eighth Circuit held that the law enforcement officers' conduct, even if they intentionally misled the

11

defendant's attorney, had no bearing on the validity of the defendant's *Miranda* waiver. Id. at 825-26 (citing Moran, 475 U.S. at 422-25).

In this case, a woman believed to be a relative of the defendant had phoned attorney Jim Cerney and requested that he contact Ivanna Red Bow. At that precise time, Red Bow was in custody and had already provided a verbal statement to the federal law enforcement officers. The record reveals that Red Bow was in the process of preparing a written statement for the officers when attorney Jim Cerney called and spoke to the investigator. At no time had Red Bow requested an attorney nor was she ever aware that a relative had contacted an attorney on her behalf. Before the interview began at approximately 4:00 p.m. on December 30, 2010, Red Bow voluntarily signed a *Miranda* waiver of rights. Even though one of the law enforcement officers did not permit attorney Jim Cerney to speak with Red Bow, or notify Red Bow that an attorney had attempted to contact her, the conduct of the BIA officer towards Cerney has no bearing on the validity of Red Bow's waiver of her *Miranda* rights. This has been clearly established by the holding of the United States Supreme Court in Moran. Red Bow's contention that her voluntary confession should be suppressed because federal law enforcement officers did not allow her to speak with an attorney who had been contacted by a relative is without merit. The conduct of the law enforcement officers is similar in nature to that which was considered by the United States Supreme Court in Moran and the Eighth Circuit Court of Appeals in Matney. The Court finds that Red Bow's verbal and written waivers of her *Miranda* rights are valid as a matter of law. The events which occurred outside the presence of Red Bow and entirely unknown to her, have no bearing on her capacity to comprehend and knowingly relinquish her constitutional rights.

**III. CONCLUSION**

The Court has carefully considered the entire record and the evidence introduced at the suppression hearing on October 14, 2011. Based on the totality of the circumstances and the current state of the law in the Eighth Circuit Court of Appeals and as pronounced by the United States Supreme Court in Moran, the Court finds no basis to suppress Ivanna Red Bow's verbal and written statements she made to federal law enforcement officers on December 30, 2010. The waiver of *Miranda* rights is valid. Accordingly, Red Bow's "Motion to Suppress Evidence" (Docket No. 27) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 20th day of October, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court